Dax D. Anderson (UBN 10168)
James T. Burton (UBN 11875)
Joshua Rupp (UBN 12647)
Craig Metcalf (UBN 2248)
KIRTON McCONKIE
60 East South Temple, Suite 1800
Salt Lake City, Utah 84111
Phone: (801) 328-3600
Fax: (801) 321-4893
Email: danderson@kmclaw.com

Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| CORNABY'S, LLC, a Utah Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>CARNET, LLC, an Idaho Company and Carma Christensen, an individual<br><br>Defendants. | Civil Action No. 2:14-cv-00462-BCW<br><br>Magistrate Judge Brooke C. Wells<br><br>COMPLAINT<br>AND<br>JURY DEMAND |

Plaintiff Cornaby's, LLC ("Plaintiff"), complains against Carnet, LLC and Carma Christensen ("Christensen" or collectively "Defendants").

### Introduction

This is an action arising under the Lanham Act, 15 USC §1051 et seq., and state law. Defendants have willfully and unlawfully infringed Plaintiff's trademark rights with the clear intent of causing confusion, mistake and deception among customers and potential customers of

modified food starch.  Defendants have also willfully and unlawfully engaged in false advertising by falsely using the ® symbol in connection with the mark ULTRA GEL.

## The Parties

1. Plaintiff Cornaby's, LLC ("Plaintiff") is a corporation duly organized and existing pursuant to the laws of the State of Utah, with its principal place of business in Utah County, Utah.

2. Plaintiff is the owner of U.S. Registered Trademark No. 4,430,992 (the "ULTRA GEL® Mark") registered November 12, 2013.  A true and correct copy of the registration certificate is attached as Exhibit A.

3. On information and belief, Defendant Carnet, LLC (Carnet") is an Idaho company with its principle place of business at 4580 Columbine Boise, Idaho 83713.

4. On information and belief, Defendant Carma Christensen, an individual residing in Idaho, is an officer of Carnet, LLC and is responsible for Carnet's actions and willful conduct in this jurisdiction.

5. On information and belief Carnet is transacting and doing business within the judicial district and has committed the acts complained of herein within this judicial district.

## Jurisdiction and Venue

6. This is an action against Defendants for trademark infringement, false advertising and false designation of origin pursuant to 15 U.S.C. §§ 1114, 1116, 1119, 1121 and 1125(a); and Utah common law infringement, unfair competition and unjust enrichment.

7. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C., §§ 1116 and 1121(a), and 28 U.S.C. § 1338(a) as it involves federal trademark law; pursuant to 28 U.S.C. § 1338(b) as it involves unfair competition related to a claim under trademark laws; pursuant to 28 U.S.C. § 1331 as it involves a federal question; and pursuant to 28 U.S.C. § 1332(a)(1) as the amount in controversy in this action exceeds the sum or value of $75,000, exclusive of interest and costs, and the action is between a citizen of different States. This Court has supplemental jurisdiction over the claims that arise under Utah law pursuant to 28

U.S.C. § 1367(a) in that they are so related to the claims that arise under the trademark laws of the United States that they form part of the same case or controversy under Article III of the United States Constitution because both the state and federal claims are derived from a common nucleus of operative facts and considerations of judicial economy dictate the state and federal issues be consolidated for a single trial.

8. This Court has general personal jurisdiction over Carnet based on its transaction of business in Utah and its sufficient minimum contacts with Utah. This Court also has specific personal jurisdiction over Carnet because the claims arise from the sale of goods in Utah and from the commission of wrongful acts outside Utah that are specifically directed toward Plaintiff in Utah.

9. Venue is proper in this District under 28 U.S.C. § 1391(b) and 28 U.S.C. § 1391(c) because a substantial part of Defendants' acts giving rise to Plaintiff's claims occurred in this District.

## PLAINTIFF'S WELL KNOWN TRADEMARK

10. Plaintiff has adopted, used and continues to use the inherently distinctive trade mark ULTRA GEL® been and continues to be in the business of producing and selling a gluten-free, Non-GMO, physically modified waxy maize cornstarch ("modified food starch") under the brand name.

11. Plaintiff has continuously used and provided high quality modified food starch in connection with the ULTRA GEL® mark since at least as early as January 1993.

12. Products sold under the ULTRA GEL® MARK have been promoted throughout the United States through national and regional trade shows, television and radio advertisements, distribution of online educational materials, sales directly to homemakers, Internet sales through Plaintiff's fully interactive retail website, online retailers such as Amazon.com and through Associated Foods and other grocery distributors.

13. Plaintiff's ULTRA GEL® MARK has come to be known in the purchasing public throughout the United States as representing products of high quality, emanating from a single

source. As a result thereof, the ULTRA GEL® MARKS and the goodwill associated therewith have become assets of great value to Plaintiff.

14. In addition to its trademark rights and registration, Plaintiff has acquired distinctiveness in its trade dress including the look and feel of its product packaging, color scheme, font and artwork which has been continuously used by Plaintiff since October 1996.

15. As a direct result of Plaintiff's time, resources and aggressive marketing efforts, the ULTRA GEL® MARK is now a nationally recognized brand that uniquely identifies Plaintiff as the source of modified food starch sold in connection with the ULTRA GEL® MARK.

## DEFENDANTS' INFRINGING ACTS

16. In 1993 Janet Stocks and her sister Carma Christensen started a company called Easy Gel to develop, and did develop, advanced and modified food starches and repackage the same for use by homemakers in their family cooking, with customers primarily located in Idaho and Utah.

17. The company created a modified food starch which it sold under the name ULTRA GEL from 1993 through 1998. The company was not formally registered.

18. In 1998, Easy Gel's Stocks and Christensen separated and agreed to divide the company's customers and trademark assets geographically.

19. Stocks took Utah and the respective customers, trademark rights, goodwill and continued the uninterrupted sales of the modified food starch in connection with the ULTRA GEL® Mark.

20. On March 10, 1999 Stocks formed a new Utah company named J. Carnet of Utah, a Utah company, and continued its use of the ULTRA GEL MARK in interstate commerce.

21. Christensen took Idaho and the respective customers, trademark rights and goodwill.

22. On December 31, 1998 Christensen formed Carnet, LLC, an Idaho Company.

23. In addition to the geographic division, there were other differences between the two new companies. Upon information and belief, Christensen's customers primarily comprised local homemakers. Stocks' customers primarily comprised sales through Associated Foods and other grocery distributors to grocery stores.

24. In 2009 Stocks merged J. Carnet of Utah with Just Berries, LLC, and the new venture was named Cornaby's, LLC.

25. Some of the J. Carnet of Utah assets Just Berries specifically bargained for included, but were not limited to, UPC codes, state registrations and trademark rights.

26. Long after Plaintiff's adoption and use of the ULTRA GEL® MARK, Defendants began using the identical mark ULTRA GEL in connection with modified food starch which are confusingly similar to Plaintiff's ULTRA GEL® MARKS including within this judicial district.

27. The advertising and offer for sale by Defendants of modified food starch under the ULTRA GEL mark has been in total disregard of Plaintiff's rights and were (i) commenced, and (ii) have continued in spite of Defendants' knowledge that the advertising and offer for sale of such products was and is in direct contravention of Plaintiff's rights.

28. Although Defendants do not own any active trademark Registrations for the ULTRA GEL mark, it falsely uses the ® symbol with the ULTRA GEL mark (i.e., ULTRA GEL®) on advertising and promotional materials (including without limitations internet sites, product packaging, product literature) which have been distributed to customers and potential customers.

29. Defendants false use of the ® symbol with the ULTRA GEL mark (Defendants' False Registration Statements") are likely to deceive customers and potential customers into falsely believing that Defendants own an active Registration for ULTRA GEL, when it does not.

30. Defendants' False Registration Statements are literally false.

31. Defendants' False Registration Statements are impliedly false.

32. Defendants' False Registration Statements are material, in that they are likely to influence purchase decisions.

33. Consumers are likely to believe that a company which owns a registered trademark is an established, trustworthy entity which sells quality products and stands behind its merchandise. Moreover, consumers are likely to believe that where there are two companies which use the same mark for the same goods, the company with the Registration has superior rights, and the company which does not have the Registration is trying to unfairly capitalize on the goodwill of the company with the Registration.

34. Although Defendants owned a federal Registration for ULTRA GEL for modified food starch, it was canceled in 2005 for failure to file a declaration of continued use.

35. Defendants do not currently own a federal Registration for ULTRA GEL for use with any goods, including modified food starch.

36. Upon information and belief, Defendants falsely used the ® symbol in connection with modified food starch with the intent to deceive consumers.

37. Upon information and belief, Defendants' False Registration Statements have been made with intent to deceive the purchasing public and/or others in the trade into falsely believing that Defendants own a Registration for ULTRA GEL, and therefore, has superior rights in ULTRA GEL, when it does not.

38. Defendants have continued to use the ® symbol with the ULTRA GEL mark (i.e., ULTRA GEL®) notwithstanding the fact that Defendants had actual and specific knowledge that it did not own any active Registrations for ULTRA GEL since at least as early as January 2005, and had actual and specific knowledge that Plaintiff intended to assert allegations regarding the False Registration Statements as early as 2011.

## COUNT I
## Trademark Infringement – Violation of 15 USC §1125(a)
## (UNFAIR COMPETITION)

39. This claim arises under the provisions of the Trademark Act of 1946, 15 U.S.C. § 1051, et seq., particularly under 15 U.S.C. § 1125(a) and alleges the use in commerce by Defendants of false designations of origin and false descriptions and representations of fact.

40. Plaintiff repeats and realleges the allegations contained in the preceding Paragraphs as if fully set forth herein.

41. Defendants have affixed, applied, or used in connection with the offer for sale of its goods, false designations of origin which tend falsely to describe or represent that the goods offered by Defendants are sponsored by, authorized by, or connected with Plaintiff, when they are not.

42. Upon information and belief, Defendants have marketed, distributed and offered for sale goods in connection with colorable imitations and simulations of the ULTRA GEL® MARK after receiving notice from Plaintiff, with the express intent of causing confusion and mistake, of deceiving, and misleading the purchasing public to buy and otherwise trade in its products in the erroneous belief that they were relying upon the reputation of Plaintiff. Defendants' acts therefore constitute use of false designation of origin and false descriptions of fact in violation of 15 U.S.C. § 1125(a).

43. Plaintiff has no adequate remedy at law and is suffering irreparable harm and damage as a result of the acts of Defendants complained of herein in an amount thus far not determined, to be determined at trial.

44. Defendants have affixed, applied, or used in connection with the offer for sale of its goods, false designations of origin which tend falsely to describe or represent that the goods offered by Defendants are sponsored by, authorized by, or connected with Plaintiff, when they are not.

45. Upon information and belief, Defendants have marketed, distributed and offered for sale goods in connection with colorable imitations and simulations of the ULTRA GEL® MARK after receiving notice from Plaintiff, with the express intent of causing confusion and mistake, of deceiving, and misleading the purchasing public to buy and otherwise trade in its products in the erroneous belief that they were relying upon the reputation of Plaintiff. Defendants' acts therefore constitute use of false designation of origin and false descriptions of fact in violation of 15 U.S.C. § 1125(a).

46. Plaintiff has no adequate remedy at law and is suffering irreparable harm and damage as a result of the acts of Defendants complained of herein in an amount thus far not determined, to be determined at trial.

## COUNT II
## (VIOLATION OF 15 U.S.C. § 1125(a))
## (FALSE ADVERTISING)

47. This claim arises under the provisions of the Trademark Act of 1946, 15 U.S.C. § 1051, et seq., particularly under 15 U.S.C. § 1125(a) and alleges the use in commerce by Defendant of false designations of origin and false descriptions and representations of fact.

48. Plaintiff repeats and realleges the allegations contained in the preceding Paragraphs as if fully set forth herein.

49. Defendants' False Registration Statements constitute false and misleading representations regarding the nature, characteristics or quality of Defendants' products.

50. In particular, Defendants' False Registration Statements: (a) falsely state that that Defendant owns a Registration for the mark under which its products are sold; and (b) misleadingly imply that Defendants are superior to Plaintiff.

51. Defendants' False Registration Statements have been and continue to be used in commerce.

52. Defendants' False Registration Statements have been and continue to be made in the context of commercial advertising or promotion.

53. Defendants' False Registration Statements made Plaintiff believe it will be damaged by these Statements.

54. Defendants' acts therefore constitute false advertising n violation of 15 U.S.C. §1125(a).

55. Plaintiff has no adequate remedy at law and is suffering irreparable harm and damage as a result of the acts of Defendants complained of herein in an amount thus far not determined, to be determined at trial.

## COUNT III
## (COMMON LAW TRADEMARK INFRINGEMENT)

56.     Plaintiff realleges and incorporates by reference all of the foregoing paragraphs.

57.     Plaintiff's Mark is distinctive and has acquired secondary meaning.

58.     Defendants' actions, as alleged above, infringe Plaintiff's common law trademark rights under federal common law, Utah common law, and constitute acts of unfair competition.

59.     By reason of the foregoing, Plaintiff is entitled to injunctive relief and monetary damages against Defendant.

60.     The infringing activities of Defendant, on information and belief, are willful and intentional, thereby justifying an award of exemplary and/or punitive damages.

## COUNT IV
## (UNJUST ENRICHMENT)

61.     Plaintiff realleges and incorporates by this reference all of the foregoing paragraphs.

62.     Defendants have benefited from the improper, unfair, and unauthorized use of Plaintiff's exclusive trademark rights and goodwill attendant thereto, as alleged above.

63.     Defendants fully appreciate and are knowledgeable of the benefits received from Plaintiff as a result of such actions.

64.     Defendants would be unjustly enriched if they were permitted to retain the benefits garnered from its actions.

65.     Equity and good conscience require that Defendants be required to account for and compensate Plaintiff an amount commensurate to the value of the benefits conferred upon it.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

WHEREFORE, Plaintiff demands:

I. That an injunction be issued enjoining Defendants and Defendant 'officers, agents, servants, employees, and attorneys and those persons in active concert or participation with them:

    A. From using the ULTRA GEL® MARK or any trademark confusingly similar thereto;

    B. From using any trademark which may be calculated to falsely represent or which has the effect of falsely representing that the products or services of Defendants or third parties are sponsored by, authorized by, or in any way associated with Plaintiff;

    C. From infringing the ULTRA GEL® MARK;

    D. From making the False Registration Statements, or any other statements, written or oral, which falsely indicate or imply that Defendants' ULTRA GEL mark is registered;

    E. From otherwise unfairly competing with Plaintiff; and

    F. From falsely representing itself as being connected with Plaintiff, or sponsored by or approved by or associated with Plaintiff or engaging in any act which is likely to falsely cause the trade, retailers and/or members of the purchasing public to believe that Defendant is, in any way, associated with Plaintiff.

II. That Defendants be required to pay to such actual damages as Plaintiff has sustained in consequence of the acts of Defendants complained of herein, and that any such monetary award be enhanced up to three times pursuant to the provisions of 15 U.S.C. § 1117.

  III. That Defendants be required to account to Plaintiff for all profits resulting from Defendants' infringing activities and false advertising and that such award of profits to Plaintiff be increased by the Court as provided for under 15 U.S.C. § 1117.

  IV. That Defendants be required to pay to Plaintiff punitive damages in connection with Plaintiff's common law unfair competition and false advertising claim.

  V. That Plaintiff have recovery from Defendants the costs of this action and Plaintiffs reasonable attorneys fees pursuant to 15 U.S.C. § 1117.

  VI. That Plaintiff have all other further relief as the Court may deem just and proper under the circumstances.

## **DEMAND FOR JURY TRIAL**

  Trial by jury is hereby demanded for all issues so triable.

  DATED this 24th day of June, 2014.

          KIRTON & McCONKIE

       By: /s/Dax D. Anderson
         Dax D. Anderson

         Attorney for Plaintiff
         Cornaby's, LLC