IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CORNABY'S LLC,<br><br>　　　　Plaintiff/Counterdefendant,<br>v.<br><br>CARNET, LLC and CARMA CHRISTENSEN;<br><br>　　　　Defendants/Counterclaimants. | **MEMORADUM DECISION AND ORDER DENYING MOTION TO DISMISS AND GRANTING FURTHER DISCOVERY**<br><br>Case No. 2:14-cv-00462-JNP<br><br>District Judge Jill N. Parrish |

Before the court is Carnet, LLC's motion for summary judgment regarding Cornaby's LLC's lack of standing. [Docket 103]. But courts may not adjudicate claims—summarily or otherwise—based upon a lack of standing; they may only dismiss the claims of a party that lacks standing. *Common Cause of Penn. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009) ("Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." (citation omitted)). The court therefore treats Carnet's motion as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam) ("Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.' One component of the case-or-controversy requirement is standing . . . ."); *Colorado Envtl. Coal. v. Wenker*, 353 F.3d 1221, 1227 (10th Cir. 2004) (treating a dismissal for lack of standing as a Rule 12(b)(1) dismissal).

The court DENIES Carnet's motion to dismiss. The court, however, GRANTS Carnet's request to reopen discovery so that it can depose David Cornaby and Janet Stocks regarding the standing issue.

**BACKGROUND**

At the hearing for the many assorted motions pending before the court, Carnet argued for the first time that this court does not have standing to adjudicate Cornaby's causes of action because it acquired the Ultra Gel trademark only after it filed this lawsuit. *See Gaia Techs. Inc. v. Recycled Prod. Corp.*, 175 F.3d 365, 369 (5th Cir. 1999) ("[I]n order to have standing under the federal infringement statutes, [a plaintiff] must prove that it owned the relevant . . . trademark when it filed suit . . . ."); *Niemi v. Lasshofer*, 728 F.3d 1252, 1261 (10th Cir. 2013) ("[S]tanding to pursue a claim must normally exist by the time a lawsuit is filed."). Carnet subsequently filed a motion requesting dismissal of Cornaby's claims for lack of standing. [Docket 103].

Cornaby's responded to the motion by providing an affidavit signed by Janet and an affidavit signed by David. Attached to both affidavits, are copies of a purchase agreement and a trademark assignment agreement that clearly show that Janet assigned whatever rights she had in the Ultra Gel trademark to Cornaby's well before this suit was initiated. [Docket 110-4, 110-8].

Carnet's reply did not challenge the authenticity of the trademark transfer documents produced by Cornaby's. Instead, Carnet argued that this court should ignore these documents for two reasons: (1) the documents were not produced before the discovery cutoff and (2) David's affidavit and attached documents should be disregarded because the affidavit contradicts his deposition testimony. In the alternative, Carnet asked for sanctions and an opportunity to depose David and Janet at Cornaby's expense. [Docket 116].

**ANALYSIS**

**I.     CARNET'S MOTION TO DISMISS FOR LACK OF STANDING**

Standing is a jurisdictional issue that may be raised at any time. *United States v. $148,840.00 in U.S. Currency*, 521 F.3d 1268, 1273 (10th Cir. 2008) ("Whether a claimant has constitutional standing is a threshold jurisdictional question" that may be raised at any time.). A motion to dismiss for lack of jurisdiction under Rule 12(b)(1) may take one of two forms. A party may make a facial challenge to the allegations contained in the plaintiff's complaint, or a party may mount a factual challenge by asserting that the underlying facts of the case do not support the jurisdiction of the court. *United Tribe of Shawnee Indians v. United States*, 253 F.3d 543, 547 (10th Cir. 2001).

By arguing that Cornaby's did not own the Ultra Gel trademark when it filed this suit, Carnet challenges the factual basis for Cornaby's standing. "In addressing a factual attack, the court . . . 'has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).'" *Id.* (citation omitted).

Cornaby's has produced conclusive documentary evidence that it owned the Ultra Gel trademark before it filed this suit. Carnet does not directly challenge the authenticity of these documents, but instead argues that this court should ignore the documents produced by Cornaby's for two reasons: as a discovery sanction or under the sham affidavit rule. The court rejects both of these arguments for excluding these documents from its consideration, but grants Carnet's alternative request to depose David and Janet regarding the authenticity of the transfer documents.

**A.     Rule 37(c)(1)**

First, Carnet argues that the court should disregard the trademark transfer documents because they were not produced during discovery. It argues that these documents were

responsive to the stipulated Rule 26 disclosures and that Cornaby's failed to provide them before the close of fact discovery. Therefore, Carnet asserts that Rule 37(c)(1) requires the exclusion of these documents. This rule provides: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).

The court concludes that Rule 37(c)(1) does not prevent this court from considering the trademark transfer documents because Cornaby's failure to produce them was harmless. "In determining whether the failure to comply with Rule 26(a) is justified or harmless, courts weigh four factors: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *ClearOne Commc'ns, Inc. v. Biamp Sys.*, 653 F.3d 1163, 1176 (10th Cir. 2011).

Under the first factor, the production of the transfer documents after the close of discovery prejudiced Carnet because it was not able to depose Janet and David to probe the documents' authenticity. But under the second factor, Carnet may cure this prejudice. Because a motion to dismiss for lack of standing may be made at any time, this court has broad discretion to craft procedures to resolve jurisdictional facts, *see United Tribe of Shawnee Indians*, 253 F.3d at 547, including the authority to allow discovery concerning the recently produced transfer documents. Moreover, a trial date has not been set, allowing time to resolve the independent standing issue before trial. Because any prejudice caused by the late disclosure is curable, the

second factor weighs heavily against exclusion.[1] The third factor regarding potential disruption of trial has no application here because trial has not commenced and because it is the court—not a jury—that must resolve the issue of standing. Finally, the fourth factor regarding bad faith weighs against exclusion. Cornaby's failure to provide the transfer documents during discovery does not rise to the level of willfulness or bad faith. Indeed, Cornaby's had nothing to gain by failing to disclose the documents.

Weighing these factors in light of this court's broad authority to reopen discovery and take evidence to determine Cornaby's standing to bring suit, the court determines that Cornaby's failure to produce the transfer documents prior to the discovery cutoff date was harmless. The court, therefore, shall not disregard the documents under Rule 37(c)(1) when determining whether Cornaby's has standing.[2]

---

[1] At the hearing, when the court raised the possibility of reopening discovery to permit Carnet the chance to depose Janet and David about the transfer documents, Carnet responded that it preferred exclusion of the documents to an opportunity to conduct discovery. [Docket 106, pp. 115–16]. A party, however, may not willfully refuse a chance to cure the prejudice caused by an untimely disclosure in order to bolster its claim for exclusion.

[2] As the court noted during the hearing, it harbors some doubt as to whether Rule 37(c)(1) can require this court to disregard competent evidence when it performs its constitutionally mandated duty to assure itself of its jurisdiction to hear the claims raised by a litigant. On one hand, Rule 37(c)(1) broadly declares that belatedly disclosed evidence shall be excluded "on a motion, at a hearing, or at trial, unless the failure [to disclose] was substantially justified or is harmless." On the other hand, this court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *United Tribe of Shawnee Indians*, 253 F.3d at 547 (citation omitted). Given that a standing challenge may be brought at any time—even after trial—such broad authority seems necessary to adequately carry out the court's constitutional duty to decide whether a party has standing. Moreover, arriving at a manifestly incorrect conclusion concerning this court's jurisdiction to hear a claim based upon the exclusion of documents that conclusively prove either the presence or absence of standing is a troubling outcome. Because the court concludes that Rule 37(c)(1) does not require the exclusion of the transfer documents, it need not grapple with this question, which was not briefed by the parties.

### B. The Sham Affidavit Rule

Carnet also argues that David's affidavit and the attached trademark transfer documents [Docket 110-8], which were filed as an exhibit to Cornaby's response to the motion to dismiss, should be disregarded because the affidavit contradicts his prior deposition testimony. In David's deposition, he was asked when a written assignment of trademark rights had been executed. [Docket 103-3, p. 27]. He responded by referencing a "Confirmatory Trademark Assignment," which purported to confirm a prior assignment of Janet's trademark rights. [Docket 103-4]. The Confirmatory Trademark Assignment was executed shortly after Cornaby's initiated this lawsuit. In David's affidavit filed with Cornaby's response, he asserted that he executed the trademark transfer documents in early February 2010, well before this lawsuit had been filed.

Under the sham affidavit rule, a court may disregard an affidavit that contradicts prior deposition testimony. *Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1218 n.3 (10th Cir. 2014). But the threshold requirement of a contradiction between deposition testimony and a subsequent affidavit has not been satisfied here. David did not testify that the *exclusive* trademark assignment agreement was the post-lawsuit Confirmatory Trademark Assignment. Thus, the subsequent assertion in his affidavit that he executed pre-lawsuit trademark assignment documents does not directly contradict his deposition testimony. Moreover, Carnet provides no authority for the proposition that the sham affidavit rule may be extended to exclude not only assertions in an affidavit, but also documents attached to an affidavit.

Finally, the court notes that the resolution of Carnet's sham affidavit argument has no effect on the evidence that may properly be considered by this court. The same trademark transfer documents that were attached to David's affidavit were also attached to Janet's affidavit in support of Cornaby's response to the motion to dismiss. [Docket 110-4]. Because there is an

independent source for the transfer documents, it makes no difference whether the court excludes the documents attached to David's affidavit.

C. **Findings of Fact and Conclusions of Law**

Cornaby's has proffered documents signed by Janet and David that purport to transfer the Ultra Gel Trademark from Janet to Cornaby's in February of 2010—before this lawsuit was filed. Carnet has not provided any evidence to contradict these documents. The court therefore finds that Cornaby's obtained whatever rights Janet had to the Ultra Gel trademark by February, 2010.[3] Because Cornaby's acquired Janet's trademark rights before this suit was filed, it has standing to assert its trademark infringement claims.

II. **CARNET'S REQUEST TO DEPOSE JANET AND DAVID AND FOR SANCTIONS**

As an alternative to dismissal, Carnet requested in its reply brief that it be given an opportunity to depose Janet and David at Cornaby's expense and that the court sanction Cornaby's by ordering it to pay for Carnet's attorney fees related to its mislabeled motion for summary judgment. [Docket 116, p. 10]. Normally, the court would not address what amounts to a motion for discovery sanctions imbedded in a reply brief. *See* DUCivR 7-1(b)(1)(A) ("No motion . . . may be included in a response or reply memorandum."). But, as noted above, an opportunity to cure any prejudice caused by a failure to produce the trademark transfer documents during discovery is integral to this court's determination that the documents should not be disregarded when deciding whether Cornaby's has standing. *See supra*, PART I.A. In order to alleviate any potential prejudice associated with the failure to produce the documents,

---

[3] Cornaby's has asserted at some points in this lawsuit that it acquired Janet's trademark rights at an earlier date. For the purposes of resolving Carnet's challenge to Cornaby's standing, it is sufficient to find that the transfer occurred at least by February, 2010.

7

the court exercises its discretion to order Janet and David to submit to depositions that shall be limited to questions regarding the transfer documents.

The court, however, denies Carnet's request to shift the entire cost of the depositions and the motion for summary judgment to Cornaby's. After the close of discovery, Carnet filed a motion requesting an order to disclose documents evidencing the "chain-of-title" of Cornaby's trademark rights. [Docket 47, p. 2]. The magistrate denied this discovery request, noting that Carnet never objected to Cornaby's initial disclosure during discovery and reasoning that the parties' agreement to produce "representative writings" regarding trademark ownership could not be used to compel Cornaby's to produce all writings on the subject. [Docket 55]. Given that Carnet's belated request for these documents was denied, this court cannot sanction Cornaby's for failing to produce the documents. Therefore, Carnet's request for discovery sanctions is denied. Each party shall bear its own costs associated with the depositions and this motion.

## CONCLUSION

Carnet's motion for summary judgment on the issue of standing [Docket 103], which the court treats as a motion to dismiss under Rule 12(b)(1), is DENIED.

Carnet's request to depose Janet Stocks and David Cornaby regarding the trademark transfer documents attached to their respective affidavits in response to the motion for summary judgment is GRANTED. Janet and David shall make themselves available to be deposed on a mutually agreed upon date and location by May 5, 2017. The depositions shall be limited to questions regarding the documents attached to their affidavits.

If Carnet elects to take the depositions, and then decides to move to dismiss based upon statements made in the depositions, it shall do so by May 19, 2017.

Carnet's request for discovery sanctions in the form of a fee award is DENIED.

Signed April 21, 2017.

                    BY THE COURT

                    _____
                    Jill N. Parrish
                    United States District Court Judge