## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CORNABY'S LLC, <br><br> Plaintiff/Counterdefendant, <br> v. <br><br> CARNET, LLC and CARMA CHRISTENSEN; <br><br> Defendants/Counterclaimants. | **MEMORADUM DECISION AND ORDER GRANTING IN PART AND DENTING IN PART MOTIONS FOR SUMMARY JUDGMENT** <br><br> Case No. 2:14-cv-00462-JNP-DBP <br><br> District Judge Jill N. Parrish |

This case is centered on a dispute among siblings over the ownership of a trademark. Cornaby's LLC, a company formed by Janet Stocks and her brother David Cornaby, claims ownership of the Ultra Gel trademark. Janet and David's sister, Carma Christensen, and her company Carnet, LLC (collectively, Carnet, LLC) also claims to own the trademark. Cornaby's sued Carnet, LLC for trademark infringement and other causes of action. Carnet, LLC has also filed a number of counterclaims against Cornaby's, including a counterclaim for trademark infringement. As detailed below, both Cornaby's and Carnet, LLC have filed various motions for summary judgment, motions to exclude evidence, and motions to strike defenses that are now before the court.

## BACKGROUND

Carma Christensen, who lived in Boise, Idaho, and her sister Janet Stocks, who lived in Provo, Utah, created an informal partnership to promote and sell a modified food starch that could be used as a thickening agent in home baking and cooking. The product was sold under the Ultra Gel trademark.

The partnership formed by Carma and Janet was named Carnet—a portmanteau of the first names of the two sisters. There is a dispute as to when the partnership was formed. Carma has produced evidence that the partnership was formed in late 1992 or early 1993. But it is undisputed that the partnership was in place by May 1993, when Carma and Janet each placed money into a bank account that was used to pay for partnership expenses.

Janet made some limited uses of the Ultra Gel trademark in the Provo area between February and April 1993. In January 1993, Janet acquired 50 pounds of the modified food starch that she began to call Ultra Gel. Around late January, she introduced the product to her community education cooking class of about 15 students held in the Lehi Junior High School. She acquired some jars and tubs from a local packaging company in early February 1993. Soon thereafter, she filled the jars and tubs with the product and taped homemade Ultra Gel labels to them. She sold the jars and tubs to some of the students in her community education cooking class, to existing customers to whom she had sold other thickening agents in the past, and to local customers whom she met when she did cooking demonstrations at local businesses or church events. She also sold the product to a local pastry shop and to two other local businesses for resale. By April, 1993, Janet's Ultra Gel sales had grown to about $400.

In early 1993, Janet contacted local grocery chains to see if they would carry the Ultra Gel product. Managers told her that they would carry the product if she would professionally package it. Purchasing professional labels and packaging required a significant capital investment, so Carma and Janet decided to pool their resources and work together. In May, 1993, Carma and Janet each agreed to deposit money into an Idaho bank account dedicated to the joint venture. Carma and Janet both worked on the design for the professional labels. On May 21,

1993, Janet picked up the professionally packaged Ultra Gel product and delivered it to several grocery stores in the Provo area.

Over the next five years, Carma and Janet worked together as partners to promote and sell Ultra Gel. Carma did the bookkeeping and concentrated on marketing and selling Ultra Gel in Idaho. Janet was in charge of operations and focused on marketing and selling the product in Utah. From 1993 through the end of 1997, most of the Carnet partnership's sales of the Ultra Gel product were concentrated in Idaho and Utah. In 1996 and 1997, Carnet also sustained a modest level of sales in a few western states, such as Arizona, Nevada, Oregon, and Washington. [Docket 59-4].

In 1993, Carma retained a lawyer to register the Ultra Gel trademark. Carma applied for a registration on July 12, 1993, and the United States Patent and Trademark Office (USPTO) registered the trademark on April 12, 1994. Carma's lawyer told her that because Carnet was a partnership, it could not hold property. Carma, therefore, registered the trademark in her own name. Janet knew that Carma had registered the trademark, but she did not know that the registration listed only Carma as the owner.

Janet decided to leave the Carnet partnership in early 1998. Janet received a sum of money for her interest in the partnership. It is unclear whether this money represented a division of the assets of the Carnet partnership or whether Carma had purchased Janet's interest in the partnership. [Janet Depo. 45, 47–48; Carma Depo. 173]. Carma and Janet made an oral agreement when they separated their business relationship, but the precise terms of this agreement are now in dispute. Janet testified that the sisters agreed that Carma would "take Idaho" and she would "take Utah" and that "wherever else we go, we go from there." [Janet Depo. 51–54]. Thus, under Janet's version of the agreement, Carma had the exclusive right to

sell in Idaho, Janet had the exclusive right to sell in Utah, and customers in the other 48 states were fair game to either sister. Carma, on the other hand, testified that the agreement was that Janet would take all of the existing customers in Utah and that Carma would take the existing customers in Idaho and the other 48 states. [Carma Depo. 173–76; Emory Depo. 18–19].

After the partnership ended, Carma continued to do business under the Carnet name and formed Carnet, LLC. In October, 1998, Carnet, LLC created a website that it used to promote and sell Ultra Gel online. [Docket 61-4]. Carnet, LLC also placed an ad in a national magazine, "Taste of Home." [Carma Depo. 178–79] These efforts greatly expanded Carnet, LLC's nationwide sales. In 1999, Carnet, LLC sold Ultra Gel in all 50 states. [Docket 59-4]. Thereafter, it continued to sell the product throughout the United States. [Carma decl. ¶¶ 2, 17].

After she left the partnership, Janet continued to sell Ultra Gel in Utah. [Docket 58, p. x; Janet Depo 22–23]. Around 2008, Janet went into business with her and Carma's brother, David Cornaby. [Cornaby Depo. 30–31; Docket 61-6]. In 2009, Janet and David formed Cornaby's, LLC, which inherited Janet's trademark rights and continued to market and sell Ultra Gel. [Docket 61-7]. Cornaby's does not point to any evidence that Janet, David, or Cornaby's sold the product outside of Utah.

In 2005, the USPTO cancelled Carma's registration of the Ultra Gel trademark because she failed to renew the registration. But Carnet, LLC continued to use the circle-R symbol (®) in its advertising and promotional materials after the registration was cancelled.

In 2012 or 2013, David called Carma to discuss a potential joint response to a competitor that was using a trademark that was similar to the Ultra Gel trademark. During this conversation, David informed Carma that he had discovered that the Ultra Gel trademark registration had been

canceled.[1] [Carma Decl. ¶ 18]. Carma responded that she had been concerned that the registration might have been canceled and that she would find a lawyer to renew the registration. Carma expressed her concern about the cost of hiring an attorney because she had a bad experience when a lawyer charged her $200 for a ten-minute phone conversation. David stated that he had a son-in-law who was a patent attorney and that he could handle it for less money. Carma agreed that David's son-in-law could take care of the Ultra Gel registration and offered to split the legal costs. From this conversation, Carma believed that David would act to protect both of their interests in the Ultra Gel trademark. [Carma Decl. ¶ 18].

On August 8, 2012, Cornaby's filed an application for the Ultra Gel trademark. The application listed Cornaby's as the sole owner of the trademark. As part of the application, David certified that he believed Cornaby's "to be the owner of the trademark/service mark sought to be registered." He also certified that to the best of his knowledge, "no other person, firm, corporation or association has the right to use the mark in commerce." The USPTO registered the Ultra Gel trademark to Cornaby's on November 12, 2013.

In November, 2013, David began to discuss with Carma the possibility of purchasing Carnet, LLC. In January, 2014, David made an offer to buy the business. Carma rejected the offer because she did not think it was reasonable. David then informed Carma that the Ultra Gel trademark had been registered in Cornaby's name only. He threatened to contact Walmart, one of Carnet, LLC's major customers, and demand that it cease selling Ultra Gel supplied by Carnet, LCC due to trademark infringement.

---

[1] David remembers the conversation differently. He testified that it was Carma that told him that the Ultra Gel registration had lapsed. [David Depo. 87].

On March 17, 2014 David sent an email to Carma, which stated in part:

We need to resolve the Ultra Gel Trademark situation so that our respective rights in the Ultra Gel mark are not lost. . . . The family has "manufactured" and distributed modified food starch under the name Ultra Gel since about 1993. About 1998, the business was split up into two separate businesses with you selling the starches in Idaho and Janet selling in Utah. . . . Recently you started to offer Ultra Gel food starch in areas outside of Idaho in regions where Cornaby's has been selling Ultra Gel. . . . If this situation continues where both of our companies are marketing the same product in the same territories, then the trademark laws make it clear that rights in the mark "Ultra Gel" may be lost. For these reasons, Cornaby's has no other choice but to require that Carnet Foods stop all sales of modified food starch under the name Ultra Gel outside of Idaho. If you do not agree to stop the infringing and confusing uses outside of Idaho, then Cornaby's may be left with no choice but to file a lawsuit to protect the public from confusion and to protect the Ultra Gel mark. We will, of course, ask to have the court order that you pay our attorney's fees as there is really no reasonable basis for your actions. Once again, this is purely a business issue and is not at all personal.

On April 11, 2014, Carma filed a petition with the USPTO to cancel the Cornaby's registration. In June, 2014, Cornaby's sued Carnet, LLC and Carma, claiming that they had infringed its trademark rights. The operative complaint alleges causes of action for federal and common law trademark infringement, federal false advertising, unjust enrichment, and deceptive trade practices under Utah law. [Docket 20]. After filing this lawsuit, David told one of Carnet, LLC's major distributors, Amazon.com, that it should not do business with Carnet, LLC because Cornaby's held the federal registration for the Ultra Gel trademark. Amazon.com stopped carrying Carnet, LLC's Ultra Gel product based upon Cornaby's federal registration.

Carnet, LLC and Carma filed a counterclaim against Cornaby's, asserting causes of action for declaratory relief; cancelation of the Cornaby's registration under various theories, including fraud before the USPTO; common law trademark infringement; fraud; and tortious interference with a  business relationship. [Docket 26].

Both Cornaby's and Carnet, LLC filed multiple motions for summary judgment. Cornaby's filed motions for summary judgment on Carnet, LLC's counterclaims for trademark

infringement, fraud before the USPTO, and fraud. Carnet, LLC filed two overlapping motions for summary judgment on all of the claims asserted by Cornaby's. Carnet, LLC also filed a separate motion for summary judgment in which it argued that it should prevail as a matter of law on its fraud before the USPTO claim.

The parties also filed several other motions. Cornaby's filed two motions to exclude evidence as a discovery sanction. Carnet, LLC also filed a motion to exclude evidence as a discovery sanction. Carnet, LLC filed motions to strike Cornaby's affirmative defenses of naked licensing and prior use of the trademark. Finally, Carnet, LLC filed a motion for leave to file an additional declaration.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (citation omitted). On a motion for summary judgment, the court "consider[s] the evidence in the light most favorable to the non-moving party." *Conroy v. Vilsack*, 707 F.3d 1163, 1170 (10th Cir. 2013) (citation omitted). However, "[w]hen the moving party has carried its burden under rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (alterations in original) (citation omitted).

**ANALYISIS**

## I.  OWNERSHIP OF THE ULTRA GEL TRADEMARK

"Rights in a trademark are determined by the date of the mark's first use in commerce. The party who first uses a mark in commerce is said to have priority over other users." *Hana Fin., Inc. v. Hana Bank*, 135 S. Ct. 907, 909 (2015). "The right to a trademark only extends to the area in which it is used . . . ." *Okla. Beverage Co. v. Dr. Pepper Love Bottling Co.(of Muskogee)*, 565 F.2d 629, 633 (10th Cir. 1977). The owner of a trademark may obtain constructive nation-wide rights to the mark by obtaining a registration from the USPTO. 15 U.S.C. § 1057(c). Constructive registration rights, however, do not extinguish common law rights to a trademark that have been established in a particular region before the application for the registration was filed with the USPTO. *Id.*

Cornaby's and Carnet, LLC both claim to have superior rights to the Ultra Gel trademark. Several of Cornaby's causes of action—namely, federal trademark infringement, common law trade mark infringement, unjust enrichment, and deceptive trade practices under the Utah Code[2]—rest entirely or in part upon proving Cornaby's has superior rights to the trademark. Similarly, Carnet, LLC's counterclaim for common law trademark infringement requires it to prove that it has superior rights to the trademark.

Cornaby's has moved for summary judgment on Carnet, LLC's trademark infringement counterclaim, [Docket 58], while Carnet, LLC has moved for summary judgment on Cornaby's

---

[2] Cornaby's Utah deceptive trade practices claim is based upon two distinct allegations. Cornaby's alleges that Carnet, LLC violated the Utah statute by (1) improperly using the Ultra Gel trademark and by (2) deceptively using the "circle-R" symbol (®) in its advertising. [Docket 20, ¶¶ 67–69]. The court addresses the portion of the Utah deceptive trade practices claim that is based upon trademark infringement in this part of the court's memorandum decision. The court addresses the portion of the Utah deceptive trade practices claim based upon Carnet's use of the circle-R symbol in Part II of this memorandum decision.

federal and common law trademark infringement claims, unjust enrichment claim, and Utah deceptive trade practices claim, [Docket 59, 60]. In order to resolve these competing motions for summary judgment, the court must determine whether either party can establish ownership of the trademark as a matter of law.

A. *Janet's Use of the Trademark in February-April 1993*

It is undisputed that Carma and Janet formed the Carnet partnership to promote and sell Ultra Gel. While Carnet, LLC asserts that a partnership was in place earlier, Janet testified in her deposition that the partnership had been formed by the time that she and Carma pooled their money in May 1993 to pay for professional packaging for their Ultra Gel product. [Janet Depo. 13-16, Janet Decl. 14, 16]. It is therefore undisputed that a partnership was in place by at least May of 1993. Cornaby's provided evidence that Janet used the Ultra Gel trademark in the months prior to May 1993, leading to the question of whether Cornaby's can establish that Janet acquired any rights to the trademark in the Provo area prior to forming a partnership with her sister.

In order to answer this question, the court must examine Janet's use of the Ultra Gel trademark in commerce before the undisputed start date of the Carnet partnership. For approximately three months, Janet sold jars and tubs of product bearing homemade Ultra Gel labels in the Provo area. She sold the product to individuals she had met while teaching a community cooking class and through cooking demonstrations she performed at local businesses and at church events. She also sold the product to a pastry shop and two other local businesses for resale. By April, 1993, Janet's Ultra Gel sales had grown to about $400.

A relatively modest commercial use of a trademark may be sufficient to establish trademark rights in a particular geographic region, so long as these initial efforts are followed by continuous use of the mark. 2 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 16:6 (4th ed. 2016). However, a limited initial use of a trademark that is not followed by continued

efforts is either insufficient to establish a trademark right or leads to an abandonment of any inchoate rights to the mark. *Id.* § 16:9; *Menendez v. Holt*, 128 U.S. 514, 521 (1888) (where a mark was occasionally used for a period of three years followed by 20 years of disuse, "[t]he use thus proven was so casual, and such little importance apparently attached to it, that it is doubtful whether [the first user of the mark] could at any time have successfully claimed the words as a trade-mark; and, at all events, such use was discontinued before [the second user of the mark] appropriated the words to identify their own flour, and there was no attempt to resume it."); *Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 599–600 (9th Cir. 2014) (holding that a litigant had no right to a trademark that it had not used during a seven year period, while noting that "[t]o establish a protectible ownership interest in a common law trademark, the owner must 'establish not only that he or she used the mark before the mark was registered, but also that such use has continued to the present.'" (citation omitted)); *La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1271–72 (2d Cir. 1974) ("To prove bona fide usage, the proponent of the trademark must demonstrate that his use of the mark has been deliberate and continuous, not sporadic, casual or transitory . . . .").

If Janet had continued her individual effort to promote the Ultra Gel trademark, her use of the mark in February through April 1993 may have been sufficient to establish trademark rights in early 1993. But Janet abandoned her individual efforts to use the trademark when she entered the Carnet partnership. From May 1993 to early 1998, her use of the Ultra Gel mark was as an agent and fiduciary of that partnership. *See Thomas v. Schmelzer*, 796 P.2d 1026, 1032 (Idaho Ct. App. 1990) (["E]very partner is a fiduciary and a trustee. . . . 'One partner will not be permitted to obtain secretly any right that should belong to the partnership and put it to his own individual

profit.'" (citation omitted)).[3] Janet could not use her efforts within the scope of the partnership to covertly perfect a personal trademark right to the exclusion of the partnership as a whole.

Given her modest use of the Ultra Gel Trademark for about three months in early 1993, followed by a cessation of her individual efforts for five years, Janet's pre-partnership use of the mark was too "sporadic, casual or transitory" to establish ownership of the mark in 1993. *See La Societe Anonyme des Parfums*, 495 F.2d at 1271–72. Moreover, even if she had established an individual right to the trademark, she abandoned it when she became a member of a partnership that promoted Ultra Gel. Therefore, Janet did not establish an individual right to the Ultra Gel trademark in the Provo area prior to joining the Carnet partnership.

### B. *Trademark Rights Transferred upon the Dissolution of the Carnet Partnership in 1998*

Because there are no valid pre-partnership rights to the Ultra Gel trademark, ownership of the mark must be traced back to the Carnet partnership's use of the mark from May 1993 through early 1998. During this period of time, the partnership consistently used the Ultra Gel mark in Idaho and Utah, creating common law trademark rights in those states. In 1996 and 1997, the partnership also sustained a modest level of sales in a few other states, such as Arizona, Nevada, Oregon, and Washington. Thus, the Carnet partnership arguably established common law rights in a handful of other states as well.[4]

---

[3] The court applies Idaho's partnership law in this case. Although the Carnet partnership was comprised of a partner in Idaho and a partner in Utah, the partnership's bank account and records were in Idaho, tipping the scales in favor of applying Idaho law.

[4] In 1994, the partnership acquired nation-wide trademark rights through Carma's registration of the Ultra Gel mark. *See* 15 U.S.C. § 1057. But those rights evaporated when the registration was canceled. Therefore, the only trademark rights obtained by the Carnet partnership that are relevant to this case are the common law rights the partnership obtained through use of the mark. *See Crash Dummy Movie, LLC v. Mattel, Inc.*, 601 F.3d 1387, 1391 (Fed. Cir. 2010) (cancelation of a trademark registration does not negate existing common law rights).

In order to resolve the present ownership of the trademark rights obtained by the Carnet Partnership, the court must determine how those rights were transferred when the partnership was dissolved in early 1998. Carnet, LLC first argues that Carma obtained all of the rights held by the Carnet partnership because she purchased Janet's interest in the partnership. [Docket 64, p.2; Docket 71, p. 12]. In her deposition, Janet appears to testify that she received a small sum of money when she left the partnership. [Janet Depo. 45, 47–48]. But Janet's testimony does not establish that this sum of money represented a negotiated buyout of her interest in the partnership's assets. There is a dispute of material fact as to whether Carma bought out Janet, or whether the partnership assets were distributed to the partners as part of the dissolution of the partnership. Therefore, the court may not grant summary judgment based upon Carnet, LLC's buyout theory.

Assuming that the trademark assets of the Carnet Partnership were not purchased by Carma, but instead were distributed in some manner between the two sisters, the court must determine whether there is undisputed evidence as to how the rights were divided. Carma and Janet's accounts of the oral agreement regarding the division of territory upon the dissolution of the partnership differ. Resolving all disputes of fact in favor of Janet and Cornaby's, the evidence shows that, at most, Janet obtained exclusive Ultra Gel trademark rights in Utah.

Under Janet's version of the oral agreement, she received the right to sell Ultra Gel in Utah while Carma received the right to sell in Idaho. [Janet Depo. 51–54]. Janet's version of the oral agreement makes no mention of trademark rights. But because the goodwill associated with a product and the trademark assigned to the product are inseparable, it is reasonable to infer that the oral agreement conveyed the Carnet partnership's Utah trademark rights to Janet. *See Vittoria N. Am., L.L.C. v. Euro-Asia Imports Inc.*, 278 F.3d 1076, 1082 (10th Cir. 2001) ("A trademark

symbolizes the public's confidence or 'goodwill' in a particular product. However, it is no more than that, and is insignificant if separated from that confidence. Therefore, a trademark 'is not the subject of property except in connection with an existing business.'" (citation omitted)). Janet and Cornaby's have continuously used the Ultra Gel trademark in Utah to maintain this trademark right. Cornaby's, therefore, has produced evidence that may support an exclusive right to use the Ultra Gel trademark in Utah.

Janet also testified that the sisters agreed that each of them would have equal rights to sell Ultra Gel in the 48 states outside of Idaho and Utah. [Janet Depo. 51–54]. Thus, if the Carnet partnership had acquired any trademark rights in these 48 states, Janet represented that the sisters agreed to a coequal right to use the Ultra Gel trademark in those states.[5] But any joint right to use the trademark that Janet may have inherited from the Carnet partnership had to be perfected by actual use.

In a closely analogous Tenth Circuit case, two brothers formed a partnership in which they used the "Love" Beverage trademark for their soft drink bottling company. *Okla. Beverage*

---

[5] Professor McCarthy has outlined the problems with joint ownership of a trademark upon the dissolution of a partnership, including customer confusion and the potential forfeiture of trademark rights. 2 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 16:40 (4th ed. 2016). He cites some authority for the proposition that courts should interpret contracts to avoid such joint ownership arrangements. *Id.* The court, however, is unaware of any Tenth Circuit authority explicitly adopting such a presumption when interpreting contracts. Indeed, the Tenth Circuit has acknowledged, but has not explicitly endorsed, the opposite presumption of joint ownership of a trademark upon dissolution of a partnership. *Okla. Beverage Co.*, 565 F.2d at 631 ("The defendants cite various cases and treatises for the proposition that absent agreement on the dissolution of a partnership, all partners have an equal right to use the goodwill and the trademark of the former partnership.").

The court, however, need not resolve whether a presumption for or against joint ownership should be adopted in the Tenth Circuit. When establishing the terms of a disputed oral agreement on summary judgment, the court must resolve all disputes regarding the terms in favor of the nonmoving party. Regardless of any presumption, the court must assume that the terms of the contract were what Janet said they were. However ill-advised the arrangement may have been, the court must assume that the sisters agreed to joint ownership.

*Co.*, 565 F.2d at 630. The brothers later decided to go their separate ways. The first brother continued to use the "Love" Beverage trademark, while the second brother adopted a different trademark to represent his product. *Id.* There was evidence, however, that the two brothers considered the "Love" Beverages trademark to be their joint property even after the dissolution of their partnership. *Id.* at 630–31. Many years later, the successor in interest to the second brother's bottling company sued to establish its right to use the "Love" Beverage trademark, arguing that the second brother retained a coequal right to use the trademark after the dissolution of the partnership. *Id.* at 631. The Tenth Circuit acknowledged, but did not explicitly endorse, authority "for the proposition that absent agreement on the dissolution of a partnership, all partners have an equal right to use the goodwill and the trademark of the former partnership." *Id.* The court noted, however, that these authorities also hold that each partner's trademark rights may only be perfected by continuous use after the dissolution of the partnership. *Id.* Because the business entity established by the second brother did not use the "Love" trademark for at least 26 years, any rights the second brother inherited from the partnership were abandoned. *Id.* at 631– 32.

In this case, Janet likewise abandoned any joint trademark rights that she may have obtained upon the dissolution of the Carnet partnership. She does not cite evidence of any post-dissolution uses of the Ultra Gel trademark in any of the states outside of Idaho and Utah where the Carnet partnership may have acquired rights. Thus, even if the sisters had agreed to share the trademark rights the Carnet partnership obtained in some states (or if Tenth Circuit law presumes such a division upon the dissolution of a partnership), Janet never perfected her trademark rights through use of the mark in these states. Moreover, under Janet's version of the oral dissolution agreement, the sisters obtained co-equal rights in these states, preventing Janet or

her successors from suing for infringement unless Carma or her successors in interest abandoned her rights. Cornaby's presented no such evidence of abandonment. [Docket 69, p. ix]. Nor did it present evidence to contradict Carnet, LLC's proof that it sold Ultra Gel in all 50 states by 1999. [Docket 68, p. xii; 70, p. xi].

In sum, resolving all disputed facts in favor of Cornaby's, the most that it can prove is that Janet obtained exclusive trademark rights in Utah when she left the Carnet partnership.

### C. Trademark Rights Established After the Dissolution of the Carnet Partnership

Although it is difficult to say precisely where the Carnet partnership had established trademark rights outside of Idaho and Utah, it is safe to say that the partnership could claim to have common law trademark rights in only a handful of states. Most states were up for grabs when the partnership ended, leading to the question of whether Carnet, LLC or Cornaby's was the first to use the Ultra Gel trademark in these untapped markets.

Carnet, LLC presented evidence that soon after the partnership dissolved, it published a website that promoted Ultra Gel and facilitated nationwide sales via the internet. Carnet, LLC also advertised in a national magazine that catered to home cooks called "Taste of Home." [Carma Depo. 178–79]. These efforts greatly expanded Carnet, LLC's nationwide sales. In 1999, Carnet, LLC sold Ultra Gel in all 50 states. [Docket 59-4]. It continued to sell Ultra Gel throughout the United States thereafter. [Carma decl. ¶¶ 2, 17].

Cornaby's, on the other hand, cites no evidence that Janet used the Ultra Gel trademark outside of Utah in the years after the dissolution of the partnership. There is no evidence that either Janet or Cornaby's used the trademark in any untapped market before Carnet, LLC did so. Moreover, Cornaby's has not pointed to any evidence that Carnet, LLC failed to establish common law trademark rights in any region within the United States before Cornaby's filed its registration application with the USPTO on August 8, 2012. *See* 15 U.S.C. § 1057(c)

(constructive registration rights to a trademark do not supersede common law rights to the mark that are established prior to the date when the application for the registration was filed). Indeed, Cornaby's concedes that Carnet, LLC sold Ultra Gel in all 50 states as early as 1999. [Docket 68, p. xii; 70, p. xi]. The undisputed evidence, therefore, demonstrates that Carnet, LLC has a superior claim to the Ultra Gel trademark in all regions where the Carnet partnership had not previously acquired trademark rights.

### D. Cornaby's Naked Licensing Defense

Cornaby's argues that it is entitled to summary judgment on the issue of ownership of the Ultra Gel trademark under a naked licensing theory. [Docket 58, pp. 5–7]. "Naked (or uncontrolled) licensing of a mark occurs when a licensor allows a licensee to use the mark on any quality or type of good the licensee chooses. . . . When 'a trademark owner engages in naked licensing, without any control over the quality of goods produced by the licensee, such a practice is inherently deceptive and constitutes abandonment of any rights to the trademark by the licensor.'" *Stanfield v. Osborne Indus., Inc.*, 52 F.3d 867, 871 (10th Cir. 1995) (citation omitted).

Cornaby's points to Carma's deposition testimony where she asserts complete ownership of the trademark and claimed that Janet's post-partnership use of the mark was by way of an informal and revocable license. [Carma Depo. 158–61]. Cornaby's argues that if Janet's use of the trademark was by way of a license, Carma and Carnet, LLC lost the rights to the mark under a naked licensing theory because it is undisputed that neither Carma nor Carnet, LLC exercised control over the quality of the Ultra Gel product sold by Janet or Cornaby's.

Cornaby's is not entitled to summary judgment on the naked licensing defense because it cannot be asserted by the licensee. The Tenth Circuit has held:

> The licensee is estopped from claiming any rights against the licensor which are inconsistent with the terms of the license. This is true even after the license expires. He is estopped from contesting the validity of the mark, . . . or

challenging the license agreement as void or against public policy, e.g., because it granted a naked license.

*Creative Gifts, Inc. v. UFO*, 235 F.3d 540, 548 (10th Cir. 2000). If Janet obtained an informal license to use the Ultra Gel trademark, Cornaby's stepped into Janet's shoes as a licensee when it obtained Janet's trademark rights. Cornaby's, as a licensee, is estopped from asserting a naked license defense.

### E. Conclusion

There is a dispute of material fact as to whether Cornaby's or Carnet, LLC has an exclusive right to use the Ultra Gel trademark in Utah. But Cornaby's has not cited evidence that can support a conclusion that it has trademark rights in any of the other 49 states that is superior to the rights held by Carnet, LLC. The court, therefore, DENIES Cornaby's motion for summary judgment on Carnet, LLC's counterclaim for trademark infringement. [Docket 58]. The court GRANTS IN PART AND DENIES IN PART Carnet, LLC's motions for summary judgment on Cornaby's causes of action for federal trademark infringement, common law trade mark infringement, unjust enrichment, and deceptive trade practices under the Utah Code. [Docket 59, 60]. The court grants summary judgment in favor of Carnet, LLC on these claims to the extent that they are based upon trademark infringement outside of the state of Utah. To the extent these claims are based upon trademark infringement within Utah, summary judgment is denied.

## II. CORNABY'S CIRCLE-R CLAIMS.

Cornaby's asserts a federal false advertising claim based upon its allegation that Carnet, LLC deceptively used the circle-R symbol (®) in its advertising and promotional materials after the Ultra Gel registration was cancelled in 2005. Cornaby's also asserts a Utah deceptive trade practices claim that is based in part upon Carnet, LLC's use of the circle-R symbol. *See, supra*, n.1.

Carnet, LLC argues in passing that it is entitled to summary judgment on Cornaby's federal false advertising and Utah deceptive trade practice claims based upon its unclean hands defense. Carnet, LLC argues that Cornaby's was at fault for its inability to reinstate its registration of the Ultra Gel trademark, *see, infra*, Parts III–IV, and that Cornaby's unclean hands justified its deceptive use of the circle-R symbol in advertising.

"The unclean hands doctrine proscribes equitable relief when, but only when, an individual's misconduct has 'immediate and necessary relation to the equity that he seeks.'" *Henderson v. United States*, 135 S. Ct. 1780, 1783 n.1 (2015) (quoting *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933), in which the Court held that "courts of equity do not make the quality of suitors the test. . . . They do not close their doors because of plaintiff's misconduct, whatever its character, that has no relation to anything involved in the suit, but only for such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication."); *accord Worthington v. Anderson*, 386 F.3d 1314, 1320 (10th Cir. 2004).

Carnet, LLC's unclean hands defense does not entitle it to summary judgment on Cornaby's false advertising and deceptive trade practices claim for two reasons. First, the unclean hands defense only applies to claims for equitable relief. *Miller v. U.S. Dep't of Interior*, 635 F. Supp. 2d 1224, 1233 (D. Colo. 2009). To the extent that Cornaby's seeks money damages for its false advertising and deceptive trade practices claims, unclean hands is no defense. Second, to the extent that Cornaby's seeks the equitable remedy of injunctive relief, Cornaby's alleged misconduct does not bear an "immediate and necessary relation to the equity that [Cornaby's] seeks" that would justify summary judgment in favor of Carnet, LLC on its unclean hands defense. *See Henderson*, 135 S. Ct. at 1783 n.1. Even if Cornaby's has improperly blocked

Carnet, LLC from registering the Ultra Gel trademark in its name, this misconduct does not directly relate to Carnet, LLC's alleged misconduct in deceiving the public regarding the status of its trademark registration. *See Pom Wonderful LLC v. Welch Foods, Inc.*, 737 F. Supp. 2d 1105, 1110–11 (C.D. Cal. 2010) (denying a defendant's motion for summary judgment that was based upon an unclean hands defense because the misconduct was not sufficiently related to the plaintiff's false advertising claims). Any wrongdoing related to Cornaby's registration of the trademark cannot fully justify a deceptive use of the of the circle-R symbol.

Although the court may consider the allegations of Cornaby's unclean hands when weighing the equities relevant to injunctive relief, the court may not grant summary judgment based upon Carnet, LLC's unclean hands defense. The court, therefore, DENIES Carnet, LLC's motion for summary judgment, [Docket 59], to the extent that it seeks a judgment in its favor on Cornaby's federal false advertising claim and the circle-R claim alleged under the Utah deceptive trade practices cause of action.[6]

## III. CARNET, LLC'S FRAUD BEFORE THE USPTO CLAIM

Carnet, LLC alleges a counterclaim for cancellation of Cornaby's trademark registration for fraud before the USPTO. The gravamen of this claim is that David knowingly committed fraud when he signed a declaration stating that he believed Cornaby's "to be the owner of the trademark/service mark sought to be registered" and that to the best of his knowledge, "no other person, firm, corporation or association has the right to use the mark in commerce." Carnet, LLC asserts that David intentionally lied because he knew that Carma had a legal right to use the Ultra Gel mark when he signed the declaration.

---

[6] It remains to be seen whether Cornaby's can prove damages or unjust enrichment by showing that Ultra Gel consumers base their purchasing decisions on whether the trademark is registered with the USPTO.

In order to prevail on this claim, Carnet, LLC must prove by clear and convincing evidence: "(1) the false representation regarding a material fact; (2) the registrant's knowledge or belief that the representation is false (scienter); (3) the intention to induce action or refraining from action in reliance on the misrepresentation; (4) reasonable reliance on the misrepresentation; and (5) damages proximately resulting from such reliance." *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1226 (10th Cir. 2000); *see also id.* at 1227 (recognizing the clear and convincing evidence standard).

The key issue in this case is whether David knew or believed that his representation that "no other person, firm, corporation or association has the right to use the [Ultra Gel] mark in commerce" was false when he made it. At issue is David's "subjective, 'honestly held, good faith' belief" regarding other persons or entities that may have had conflicting rights to the trademark. *See id.* "Statements of honest, but perhaps incorrect, belief or innocently inaccurate statements of fact are insufficient" to establish fraud on the USPTO. *Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 942 (10th Cir. 1983).

Ordinarily, an applicant has no obligation to reveal junior users of a trademark because they do not have a right to use the mark in commerce. *Rosso & Mastracco, Inc. v. Giant Food Inc.*, 720 F.2d 1263, 1266 (Fed. Cir. 1983) (cited by *San Juan Prod., Inc. v. San Juan Pools of Kansas, Inc.*, 849 F.2d 468, 473 (10th Cir. 1988)); *see also* 6 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 31:77 (4th ed. 2016). Thus, a failure to reveal a junior user normally is not fraudulent. The Tenth Circuit, however, has recognized an obligation to reveal "clearly established" rights of a junior user:

> On the other hand, the oath in an application for registration must be truthful. Thus, in some instances a senior user would be making a false oath where he fails to acknowledge conflicting rights of a junior user which are clearly established, for example, by a court decree, by the terms of a settlement agreement, or by a

registration. However, the rights of a junior user must be clearly established and must be in an identical mark or one so similar as to be clearly likely to cause confusion.

*San Juan Prod.*, 849 F.2d at 473 (quoting *Rosso & Mastracco*, 720 F.2d at 1266).

Both Cornaby's and Carnet, LLC filed motions for summary judgment on the fraud before the USPTO claim, each arguing that it should prevail as a matter of law. The court addresses each motion below.

*A. Cornaby's Motion for Summary Judgment*

Cornaby's argues that it is entitled to summary judgment on Carnet, LLC's fraud before the USPTO claim, asserting that there is no clear and convincing evidence that David knew or believed that Carma had a right to use the Ultra Gel trademark. [Docket 57]. The court disagrees.

There is no dispute that David knew of his sister's longstanding use of the Ultra Gel trademark, [David depo. 37], leaving only the question of whether he knew or believed that she had a right to use the mark. David's email to Carma shortly after Cornaby's secured the USPTO registration is compelling evidence of his knowledge that his sister had a right to use the trademark. In that email, David states: "We need to resolve the Ultra Gel Trademark situation so that *our respective rights in the Ultra Gel mark* are not lost." (Emphasis added). David then goes on to demand that Carma stop using the trademark outside of Idaho. In this email, David acknowledges that Carma has a right to the Ultra Gel trademark. Moreover, David conceded that Carma had a right to use the mark in Idaho because he confined his demand for her to cease use of the trademark to the other 49 states.

Because there is clear and convincing evidence that David knew that Carma had at least some regional rights to use the Ultra Gel trademark, the court may not grant summary judgment in favor of Cornaby's on the fraud on the USPTO claim. Cornaby's motion for summary judgment on this issue is therefore DENIED.

### B. Carnet, LLC's Motion for Summary Judgment

Carnet, LLC moves for summary judgment on its own claim for fraud on the USPTO, arguing that it should prevail as a matter of law. The court concludes that summary judgment in favor of Carnet, LLC on this claim is likewise barred because Cornaby's presented evidence that creates a dispute of material fact on this issue.

Carnet, LLC may prevail on this claim in one of two ways: (1) it can prove that David knew or believed that Carma had a superior or equal right to use the Ultra Gel trademark in at least some region in the United States when he signed the declaration filed with the USPTO or (2) it can prove that David knew that Carma had a junior right to use the trademark that was "clearly established," such as by a court decree, settlement agreement, or a registration.

#### 1) Knowledge or belief of a superior or equal right to the trademark

As noted above, there is evidence that David knew that Carma had at least some superior rights to the Ultra Gel trademark. But David also presented evidence that he either did not know who had superior rights to the trademark or that he believed that Cornaby's had a superior right. In his deposition, David repeatedly stated that he did not know whether Janet or Carma had a superior right to use the trademark. He testified that right to use the trademark was a legal question that he was not qualified to answer and that Carma and Janet's cooperative use of the mark for several years made the answer to this question murky. [David depo. 37, 68, 69, 101, 104, 108]. In other portions of the deposition, he suggested that he believed (erroneously) that Janet had acquired superior nation-wide rights to the trademark because she was the first to use it in the Provo area. [David depo. 69, 111]. This deposition testimony creates a dispute of fact as to whether David knew or believed that Carma had rights to the Ultra Gel trademark.

It is true that at one point David also seemed to acknowledge that he knew that Carma had common law rights in some areas and that he viewed a trademark registration as a way to

seize trademark rights in any regions where Carma had not yet established common law rights: "The belief at that time is that there were areas that they [Carma and Carnet, LLC] - - that they had not established common law rights and that - - therefore, that this could be signed in the way it was done under - - I mean, under whatever lawyers believed that the right is. [David depo. 103]. But on summary judgment, inconsistencies in David's testimony are resolved in favor of the nonmoving party. The court therefore resolves the discrepancies in David's deposition in favor of his testimony that he either did not know what Carma and Janet's respective rights were or that he believed that Janet had acquired superior rights to the trademark.

2) Knowledge of a clearly established junior right to the trademark

Carnet, LLC can also prevail on its fraud before the USPTO claim if it proves that David failed "to acknowledge conflicting rights of a junior user which are clearly established, for example, by a court decree, by the terms of a settlement agreement, or by a registration." *San Juan Prod.*, 849 F.2d at 473 (citation omitted). The key question under this branch of liability is whether Carma's rights to the trademark were "clearly established."

Carnet, LLC argues that Carma's 1994 registration of the Ultra Gel trademark clearly established her right to the trademark and that David had an obligation to disclose Carma's rights to the mark even if he believed her rights to be junior to those of Cornaby's. But this registration conferred no rights at the time that David filed his registration application because the USPTO had canceled the 1994 registration seven years earlier. Additionally, although the 1994 registration was in Carma's name, it was based upon the Carnet partnership's efforts to promote the Ultra Gel trademark. The registration, therefore, does not clearly establish Carma's individual right to the trademark, nor does it explain how the trademark rights were divided upon the dissolution of the partnership. Thus, the 1994 registration did not clearly establish Carma's rights

to the trademark and David had no obligation to reveal her rights to the mark if he had an honestly-held belief that Carma's rights were junior to the rights held by Cornaby's.

### 3) Conclusion

Disputes of material fact preclude Carnet, LLC from prevailing as a matter of law on its fraud before the USPTO cause of action. The court DENIES its motion for summary judgment on this claim. [Docket 61].

## IV.    CARNET, LLC'S FRAUD CLAIM

Carnet, LLC alleges that David perpetuated a fraud on Carma when he stated that he would take care of the lapsed Ultra Gel trademark registration. It produced evidence that David falsely represented that he would protect both his and Carma's interests in the trademark, and that Carma refrained from hiring an attorney to renew the registration based upon her reasonable reliance upon this representation. According to Carnet, LLC, Carma's inaction prevented her from discovering that Cornaby's was in the process of registering the trademark in its own name and denied her the opportunity intervene in the registration proceedings.

Cornaby's moved for summary judgment on the fraud claim, arguing that the undisputed evidence does not support all of the elements of this cause of action. Under Utah law,[7] the elements of a fraud claim are:

> (1) a representation; (2) concerning a presently existing material fact; (3) which was false; (4) which the representor either (a) knew to be false, or (b) made recklessly, knowing that he had insufficient knowledge upon which to base such

---

[7] Neither party conducted a choice of law analysis to determine whether Utah or Idaho law applies to Carnet, LLC's fraud claim. Moreover, it is difficult for the court to conduct a choice of law analysis on its own because the record does not reveal with certainty where the allegedly fraudulent statement was made or received, or where Carma's action or inaction in reliance upon the statement occurred. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 148 (1971). Because Cornaby's cites only Utah law in its motion, and because Carnet, LLC never challenges Cornaby's application of Utah law, the court also applies Utah law to the fraud claim for the purposes of this motion.

representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) *to his injury and damage.*

*Giusti v. Sterling Wentworth Corp.*, 201 P.3d 966, 977 n.38 (Utah 2009). These elements must be shown by clear and convincing evidence. *Armed Forces Ins. Exch. v. Harrison*, 70 P.3d 35, 43 (Utah 2003). This court must take this heightened burden of proof into account when determining whether the plaintiff has produced sufficient evidence to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253–54 (1986).

Cornaby's argues that there is insufficient evidence to prove a number of the elements of a fraud claim. The court addresses each of Cornaby's arguments below.

### A. False Representation

Cornaby's argues that the evidence does not show that David made a false promise to represent Carma's interests when addressing the cancelation of the Ultra Gel registration. First, Cornaby's asserts that inconsistencies in Carma's testimony about the conversation with David make her account less credible. It further contends that David's deposition testimony that he never explicitly promised to look after Carma's interests is more credible because it is consistent. In other words, Cornaby's asks the court to weigh the evidence and conclude that David's version of the conversation is more credible. This argument is without merit because it violates the basic principle that "[o]n summary judgment, a district court may not weigh the credibility of the witnesses." *Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008).

Second, Cornaby's argues that Carma failed to identify a specific promise David made to represent her interest in the Ultra Gel trademark. Carma declared the following regarding the representations made by David:

> [David] called me and said he was getting trademarks squared away on his new products and discovered that the trademark on Ultra Gel had lapsed. I replied that I had been concerned about this possibility, and I would find a lawyer and get it

taken care of. I expressed my concerns about the potential cost, as my original lawyer had retired and our short phone inquiry to his successor had resulted in a bill of over $200. David reminded me that his son-in-law was a patent attorney and assured me that he could get it taken care of much less expensively than I could. I verified with David that the trademark would be licensed back to Cornaby's for simultaneous use, as I had permitted Janet to use it. He agreed that would be the case. I offered to split the costs with him. I thought he was acting to protect my interest and that he intended to cure the unintentional abandonment of my original trademark registration filing.

[Carma decl. ¶ 18]. Cornaby's asserts that David's statement that his son-in-law could "get it taken care of" is too vague to constitute a valid promise to act in Carma's interest. But, taken in context, David's representation that his son-in-law would "get it taken care of" indicated an assurance that he would register the trademark for their mutual benefit—or at least to refrain from acting in a way that would prejudice Carma. After finding out that the registration had lapsed, Carma stated that she would hire an attorney to "get it taken care of." David then responded that his son-in-law could "get it taken care of" for less money. The implication is clear. David's son-in-law would perform the same task that an attorney Carma would have retained would perform: renew the registration in Carma's name so that she could license it to Cornaby's.

Carma has presented evidence that David made a false representation that he would act in both of their interests when he sought to register the Ultra Gel trademark. Furthermore, a jury could conclude that this evidence meets the "clear and convincing" threshold. Therefore, disputes of material fact preclude summary judgment based upon this element of fraud.

### B. Knowledge of Falsity

In order to prove fraud, Carma must also show that David knew that the representation was false when he made it. In other words, David must have intended not to honor his promise of future action at the time that he made it. *See Von Hake v. Thomas*, 705 P.2d 766, 770 (Utah 1985) ("We have repeatedly held that a promise of future performance, when made with a present

intent not to perform and made to induce a party to act in reliance on that promise, constitutes actionable deceit and fraud.").

Cornaby's argues that it is entitled to summary judgment because Carma has not produced direct evidence that David made a promise of future action with the present intent not to perform. But the state of mind of the defendant in a lawsuit is rarely proved by direct evidence—i.e., a "confession" that the defendant had a state of mind that would lead to civil liability. Intent is most often proven with circumstantial evidence. *DeSpain v. Uphoff*, 264 F.3d 965, 975 (10th Cir. 2001) ("Because it is difficult, if not impossible, to prove another person's actual state of mind, whether an official had knowledge may be inferred from circumstantial evidence."); *Borchardt Rifle Corp. v. Cook*, 727 F. Supp. 2d 1146, 1163 n.9 (D.N.M. 2010) ("Rarely is there direct evidence of scienter, and generally scienter is proved by circumstantial evidence."). Because intent is most often inferred from surrounding circumstances, summary judgment on this issue is "particularly inappropriate." *Helf v. Chevron U.S.A. Inc.*, 361 P.3d 63, 75 (Utah 2015) ("[S]ummary judgment is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions.").

The evidence, viewed in the light most favorable to Carnet, LLC, shows that David encouraged his sister not to hire her own attorney to reinstate the lapsed Ultra Gel registration and represented that he would retain his son-in-law at a reduced cost to register the Ultra Gel trademark so as to benefit both Carma and himself. After making this representation, David applied for a trademark registration in the name of his company, Cornaby's. His application made no mention of his sister's longstanding use of the Ultra Gel trademark. While the application was pending—a period of over one year—David made no attempt to correct his prior

representation to his sister that he would represent her interests. David waited until after the USPTO registered the trademark in Cornaby's name to begin negotiations to buy Carnet, LLC. Only after Carma rejected David's offer to buy the business did he inform Carma that he had registered the trademark in Cornaby's name. David then wrote a cease and desist email to his sister in which he demanded that she stop using the Ultra Gel trademark in all markets except for Idaho. David also used the USPTO registration to demand that Amazon.com stop selling Ultra Gel provided by Carnet, LLC. David was successful in his efforts to exclude Carnet, LLC from the amazon.com website.

Taken together, these circumstances permit an inference that David knew that he would not act in Carma's interest when he told his sister that he would do so, but instead intended to register the trademark in the name of his company in order to gain the upper hand in a business dispute with his sister. The court, therefore, cannot grant summary judgment in favor of Cornaby's based upon the knowledge element of the fraud claim.

*C.  Reasonable Reliance*

Cornaby's argues next that Carma did not act reasonably when she relied upon David's representation because he was a competitor. Without citing authority, Cornaby's essentially asserts that reliance upon a business competitor's representation is unreasonable as a matter of law.

The court is unaware of any case holding that reliance upon the representation of a competitor is per se unreasonable. Moreover, the characterization of Carma and David as merely business competitors is reductive, to say the least. David is Carma's brother. Carma had helped David to prepare his taxes before this dispute arose. Their businesses had coexisted for many years prior to this lawsuit. They had even cooperated in the past to share the expense of acquiring

bar codes for their packaging. Because Carma and David were not merely business competitors, it was not unreasonable as a matter of law for Carma to rely upon her brother's representation.

### D. Actual Reliance

Cornaby's also argues that Carnet, LLC has not produced evidence that Carma changed her position in reliance upon David's representation. It notes that Carma did nothing for seven years after the first registration was cancelled, and argues that in the absence of David's false representation, there is every reason to believe that Carma's inaction would have simply continued.

Carma, however, provided evidence that but for David's representation, she would have attempted to revive the registration. She declared that after David told her that the registration had lapsed, she stated that she would retain an attorney to remedy the cancelation. [Carma decl. ¶ 18]. It was only after David proposed that his son-in-law handle the registration problem that Carma decided against doing it herself. Because there is evidence that David's representation caused Carma's inaction, summary judgment on this element of fraud is improper.

### E.    Statute of Frauds

Finally, Cornaby's argues that it is entitled to summary judgment because the fraud claim is barred by the statute of frauds. Utah's statute of frauds provides that an oral agreement is void if "by its terms is not to be performed within one year from the making of the agreement." UTAH CODE § 25-5-4. Cornaby's asserts that the USPTO will not revive a lapsed trademark registration. It argues that because Carma's original trademark registration can never be revived, David's promise to "take care of" the lapsed registration could not be accomplished within one year. Cornaby's concludes that because David's promise is void under the statute of frauds, he may not be held liable for fraud.

There are several reasons why Cornaby's statute of frauds argument fails. The most fundamental reason is that the statute of frauds does not bar a tort action for fraud in this case. The statute of frauds renders certain oral agreements unenforceable; it does not necessarily bar all tort actions related to the unenforceable oral agreement. "[A]n action sounding in tort may be barred by the statute [of frauds] where an essential element of the cause of action is an oral contract within the statute; but where the oral contract or representation is a mere circumstance or incident of a fraud it may be shown in an action in tort for damages as the statute has no application to such a case." *Easton v. Wycoff*, 295 P.2d 332, 336 (Utah 1956) (citation omitted). The Utah Supreme Court has held that even if an oral representation is unenforceable under the statute of frauds, the representation may still be the basis for a fraudulent misrepresentation claim if it induces the plaintiff to act to his or her detriment. *Fericks v. Lucy Ann Soffe Tr.*, 100 P.3d 1200, 1205 (Utah 2004).

Here, as in *Fericks*, the enforceability of David's representation under contract law is not an essential element of Carnet, LLC's fraud claim. Carnet, LLC must only prove that it changed its position because of its reasonable reliance upon David's representation—not that the representation is a valid contract. The fraud cause of action is not an indirect attempt to enforce the terms of the alleged oral contract, but rather a claim for damages caused by reliance upon the representation. Therefore, the statute of frauds does not bar Carnet, LLC's fraud claim.

The statute of frauds does not apply for an additional reason. Cornaby's argues that the promise to "take care of" the cancelled registration cannot be accomplished in one year because the USPTO will not revive a canceled registration. But there is no reason to confine David's broad commitment to take care of the canceled registration to a futile attempt to revive it.

David's pledge could also be satisfied by simply reregistering the Ultra Gel trademark in Carma's name. Thus, David's promise could be performed within one year.

### F. Conclusion

The court concludes that Carnet, LLC has produced evidence to support all of the challenged elements of its fraud claim. The court also finds that the evidence, when viewed in the light most favorable to Carnet, LLC, is sufficient to satisfy the clear and convincing evidence burden of proof. The court, therefore, DENIES Cornaby's motion for summary judgment on this claim. [Docket 46].

## V. MOTIONS TO EXCLUDE EVIDENCE, TO STRIKE, AND FOR LEAVE TO FILE

### A. Cornaby's Motions to Exclude Evidence

Cornaby's filed two motions to exclude evidence. [Docket 80, 83]. These motions seek to exclude Carma's handwritten check register and bank account statement for November and December of 1992, the declaration of Jodi Jensen, and a sales summary for the Carnet partnership in 1997. Cornaby's argues that these documents should be excluded as a discovery sanction because they were not disclosed by Carnet, LLC.

The court DENIES both of these motions as moot. Cornaby's seeks to exclude evidence that Carma purchased the substance that would later be sold as Ultra Gel in late 1992, as well as evidence that she sold a tub of the substance with an Ultra Gel label on it to Jodi Jensen in January 1993. Cornaby's also moves to exclude a document that summarizes the Carnet partnership's sales in 1997, the last full year of the Carnet partnership. The court determines that neither the admission nor exclusion of this this evidence would affect the competing motions for summary judgment on the issue of trademark ownership filed by the parties. Because Cornaby's motions to exclude have no bearing on the motions for summary judgment, the court denies them as moot. If Cornaby's wishes to exclude this evidence at trial, it may file a motion in limine.

*B. Carnet, LLC's Motion to Exclude Evidence and to Strike Cornaby's Prior Use Defense*

Carnet, LLC filed a combined motion to exclude a confirmatory trademark assignment agreement as a discovery sanction and to strike Cornaby's prior use "defense." [Docket 93]. The court DENIES the motion in its entirety.

1) Request to exclude evidence

The court denies as moot the portion of the motion that seeks to exclude the confirmatory trademark assignment. This document was signed shortly after Cornaby's filed suit and purports to confirm Janet's prior transfer of her trademark rights to Cornaby's. Carnet, LLC argues that the document should be excluded as a discovery sanction because it was not produced in discovery. The confirmatory trademark assignment is relevant to Carnet, LLC's motion to dismiss Cornaby's complaint for lack of jurisdiction, which the court has already denied based upon a different trademark assignment document. [Docket 103, 118]. Because the confirmatory trademark assignment was not dispositive of the motion to dismiss, and because that motion has already been resolved by the court, Carnet, LLC's motion to exclude the document is denied as moot.

2) Request to strike Cornaby's prior use defense

The court also denies the portion of the motion that asks the court to strike Cornaby's prior use "defense." Cornaby's is not required to plead prior use as an affirmative defense in order to raise this issue.

If a trademark has been registered with the USPTO for five consecutive years, the registration is deemed to be incontestable. 15 U.S.C. § 1065. "A plaintiff with an incontestable registration need not prove priority as part of its case in chief: the elements of [15 U.S.C. § 1115(b)] form a defense to be proven by the defendant." 5 MCCARTHY ON TRADEMARKS AND

UNFAIR COMPETITION § 26:53 (4th ed. 2016). But if the plaintiff—or in this case, the counterclaimant—does not have an incontestable registration, it must prove that it is the senior user of the mark. *See Novell, Inc. v. Network Trade Ctr., Inc.*, 25 F. Supp. 2d 1218, 1223 (D. Utah 1997) ("In order to establish a claim of trademark infringement under the Lanham Act," the claimant must prove "the mark is owned by the plaintiff."); *Henry v. Pro 10 Originals, LLC*, 698 F. Supp. 2d 1279, 1282 (D. Wyo. 2010); *First Sav. Bank, F.S.B. v. U.S. Bancorp*, 117 F. Supp. 2d 1061, 1070 (D. Kan. 2000).

Carnet, LLC does not hold a valid registration for the Ultra Gel trademark, much less an incontestable registration. On its counterclaim for trademark infringement, therefore, it has the burden to prove prior use as part of its case in chief. Cornaby's need not plead an affirmative defense of prior use in order to argue that Carnet, LLC cannot meet its burden to prove priority. Thus, Carnet, LLC's motion to bar Cornaby's from raising a prior use argument is without merit.

Moreover, even if Cornaby's were required to plead prior use as an affirmative defense, Carnet, LLC had fair notice of this issue because Cornaby's pled prior use as part of its own claims for trademark infringement. Carnet, LLC, would not be unfairly prejudiced if the court permitted Cornaby's to amend its answer to include such a defense. *See* 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER FEDERAL PRACTICE AND PROCEDURE § 1278 (3d ed. 2004) ("[T]he substance of many unpleaded Rule 8(c) affirmative defenses may be asserted by pretrial motions, particularly in the absence of any showing of prejudice to the opposing party and assuming it has had an opportunity to respond."); *see also Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 790 n.9 (10th Cir. 1998) ("Issues raised for the first time in a plaintiff's response to a motion for summary judgment may be considered a request to amend the complaint, pursuant to Fed.R.Civ.P. 15."); *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090–91 (10th Cir. 1991) ("As a

general rule, a plaintiff should not be prevented from pursuing a valid claim just because she did not set forth in the complaint a theory on which she could recover, 'provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining his defense upon the merits.'" (citation omitted)).

### C. Carnet, LLC's Motion to Strike Cornaby's Naked Licensing Defense

Carnet, LLC also moved to exclude Cornaby's naked licensing affirmative defense because it was not pled. [Docket 94]. As noted above, the court finds that the naked licensing defense fails as a matter of law because it may not be asserted by a licensee. *See, supra,* Part I.D. The court, therefore, DENIES the motion to strike as moot.

### D. Carnet, LLC's Motion for Leave to File

The day before the combined hearing on all of the pending motions, Carnet, LLC filed a motion for leave to file a supplemental declaration. [Docket 101]. Cornaby's did not oppose the motion. The court GRANTS Carnet, LLC's motion for leave to file.

Over a month after the hearing, Cornaby's filed several declarations related to the motions for summary judgment on the issue of trademark ownership.[8] [Docket 110]. Carnet, LLC did not object to Cornaby's late-filed declarations, and the court considered them. Basic fairness dictates that Carnet, LLC should also be allowed to file its declaration as well.

---

[8] The declarations were ostensibly filed in support of Cornaby's memorandum in opposition to Carnet, LLC's motion to dismiss for lack of subject matter jurisdiction. But the declarations had a tenuous connection to that filing at best. The declarations were clearly aimed at the question of trademark ownership at issue in the previously briefed and argued motions for summary judgment.

## CONCLUSION

The court rules as follows on the motions pending before the court:

(1) The court DENIES Cornaby's motion for summary judgment on Carnet, LLC's counterclaim for trademark infringement. [Docket 58].

(2) The court GRANTS IN PART AND DENIES IN PART Carnet, LLC's motions for summary judgment on Cornaby's causes of action for federal trademark infringement, common law trade mark infringement, unjust enrichment, federal false advertising, and deceptive trade practices under the Utah Code. [Docket 59, 60]. The court grants summary judgment in favor of Carnet, LLC on these claims to the extent that they are based upon trademark infringement outside of the state of Utah. To the extent these claims are based upon trademark infringement within Utah, summary judgment is denied. The court also denies summary judgment on Cornaby's federal false advertising claim and the circle-R claim alleged under the Utah deceptive trade practices cause of action.

(3) The court DENIES Cornaby's motion for summary judgment on Carnet, LLC's counterclaim for fraud before the USPTO. [Docket 57].

(4) The court DENIES Carnet, LLC's motion for summary judgment on its counterclaim for fraud before the USPTO. [Docket 61].

(5) The court DENIES Cornaby's motion for summary judgment on Carnet, LLC's counterclaim for fraud. [Docket 46].

(6) The court DENIES AS MOOT Cornaby's first and second motions to exclude evidence. [Docket 80, 83]

(7) The court DENIES Carnet, LLC's combined motion to exclude evidence and to strike Cornaby's prior use defense. [Docket 93].

(8) The court DENIES AS MOOT Carnet, LLC's motion to strike Cornaby's naked licensing defense. [Docket 94].

(9) The court GRANTS Carnet, LLC's motion for leave to file. [Docket 101].

The causes of action that remain in this case include all of Carnet, LLC's counterclaims. Cornaby's causes of action for federal trademark infringement, common law trade mark infringement, unjust enrichment, and deceptive trade practices under the Utah Code remain only to the extent that they are based upon allegations of trademark infringement within the State of Utah. Cornaby's may also assert at trial its federal false advertising cause of action and its Utah deceptive trade practices cause of action to the extent that it is based upon the circle-R claim.

Signed August 15, 2017.

BY THE COURT

Jill N. Parrish
United States District Court Judge